IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

KAMILES K. CREWS-BEY,                    :

     Plaintiff,                          :

v.                                       : CIVIL ACTION 11-00083-WS-B

DR. PAMELA BARBER, *et al*.,             :

     Defendants.                         :

## REPORT AND RECOMMENDATION

     Plaintiff, an Alabama prison inmate proceeding pro se and in forma pauperis, filed a complaint under 42 U.S.C. § 1983. This action was referred to the undersigned pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 72.2(c)(4), and is now before the undersigned on Defendants' Motion for Summary Judgment (Doc. 23) and Plaintiff's Motion for Leave to Add Additional Defendants and Motion to Amend Complaint (Doc. 17) (hereinafter "Motion to Amend"). For the reasons stated below, it is recommended that Defendants' Motion for Summary Judgment be granted and that Plaintiff's claims against Defendants Pamela Barber, M.D., Hugh Hood, M.D., and Donny Myers be dismissed. It is further recommended that Plaintiff's Motion to Amend be denied.

## I.   SUMMARY OF ALLEGATIONS AND PROCEEDINGS

During the time of the events giving rise to Plaintiff's claim, he was an inmate at Holman Correctional Facility in Atmore, Alabama.  (Doc. 13, p. 4).  Defendant Pamela Barber, M.D., is the Medical Director for Holman, Defendant Hugh Hood, M.D., is the Associate Regional Medical Director of Corizon, Inc., which was formerly known as Correctional Medical Services, Inc., and Donny Myers is the Health Services Administrator at Holman.  (Doc. 23, p. 2 at fn.2, fn.3, and fn.4).

Plaintiff was transferred to Holman on January 8, 2008.  At the time of the transfer, he was taking Ultram and Tylenol 3 for testicular pain.  (Doc. 23 at p. 2).  As early as March of 2009, Plaintiff was evaluated by Defendant Dr. Hood.  (Doc. 23, Barber Aff. at ¶ 14). Because of Plaintiff's complaints of testicular pain and the absence of any clear symptoms indicating the cause of these complaints, Dr. Hood referred him to an off-site urology specialist for further evaluation.  (Id.). Plaintiff was evaluated by an off-site urology specialist on April 3, 2009.  (Id. at ¶ 15).  The urologist did not find any abnormalities with regard to Plaintiff's right testicle and noted that there was no visible swelling of any kind.  (Id.).  On April 9, 2009, Plaintiff was again

evaluated by Dr. Hood, and because Plaintiff did not demonstrate any anatomical abnormalities which would explain the source of his alleged discomfort, Dr. Hood ordered an ultrasound of Plaintiff's scrotum. (Id.).  The ultrasound did not reveal any abnormality or any identifiable basis for Plaintiff's complaints. (Id.).

Dr. Negash Tesemma, a former physician at Holman, examined Plaintiff on September 25, 2009, when he was complaining of testicular pain. (Doc. 23, Barber Aff. at ¶ 17).  After completing a physical examination and ruling out various potential causes of testicular pain, Dr. Tesemma indicated that he was concerned that Plaintiff was undertaking "drug seeking" activity. (Id.).  Between April 7, 2010 and September of 2010, Plaintiff was seen by the medical staff at Holman several times for his complaints of "severe" testicular pain. (Doc. 13 at pp. 4 - 4(A); Doc. 23, Barber Aff. at ¶¶ 18-20).  Although examination of Plaintiff on these occasions did not reveal any medical cause for his pain, he was prescribed Motrin for any discomfort. (Id. at ¶ 18).  On May 7, 2010, Plaintiff filed a medical grievance complaining of testicle problems and complaining that the medication he was prescribed was not effective. (Doc. 13 at p. 4(A); Doc. 23, Barber Aff. at ¶ 19).  On September 22, 2010, Plaintiff underwent

another ultrasound of his scrotum which again was normal with no masses, hydrocele, or abnormal fluid collection. (Id. at ¶ 22, Doc. 23-15 at p. 47).

Dr. Barber began working as a physician at Holman in the fall of 2010. (Doc. 23, Barber Supp. Aff. at ¶ 2). She examined Plaintiff on approximately seven occasions between September of 2010 and February of 2011 for his complaints of "intense" testicular pain. (Id. at ¶ 5; Doc. 13 at p. 4(A)). On each of these occasions, she did not see any indication of any medical condition which was the source of Plaintiff's alleged pain. (Id. at ¶ 5).

Because Plaintiff's complaints persisted, on March 21, 2011, Dr. Barber ordered a CT scan of Plaintiff's pelvis. (Id. at ¶ 6). Plaintiff underwent the CT scan on April 14, 2011. (Id.; Doc. 13 at p. 4(B)). Dr. Barber evaluated Plaintiff on May 6, 2011. (Doc. 13 at p. 4(B)). Later that evening, she notified Plaintiff that the CT scan of his pelvis had revealed a small scrotal hydrocele. (Id. at 4(B) – 4(C)). A hydrocele is a sac in the scrotum containing fluid that can become swollen and cause some discomfort. (Doc. 23, Barber Supp. Aff. at ¶ 6). Most hydroceles resolve themselves without any form of medical treatment. (Id.). At the May 6 appointment, Plaintiff did not show any signs of obstruction, torsion, or malignancy

4

in his scrotum; however, he continued to complain of pain on a daily basis. (Id.).

Between February 15, 2011 and March 19, 2012, Plaintiff submitted forty-nine sick call request forms. Thirty-eight of these forms were for complaints of testicular pain. (Id. at ¶ 7). Plaintiff repeatedly requested "strong pain medication" and even "a strong muscle relaxer." (Id.). However, Plaintiff continued to receive over-the-counter pain medication for his complaints of pain. (Id.).

By July of 2011, Dr. Barber was confident that any issues related to Plaintiff's hydrocele had been resolved and that there was nothing else the medical staff could do for him for his complaints. (Id. at ¶ 8). Even so, she did see Plaintiff in July and told him that she was ordering a urology consult. (Doc. 13 at p. 4(E)). However, the urology consult was denied by Dr. Hood. (Id.). Dr. Hood had also denied a request for a pain management consult in 2009. (Id.). In light of the many evaluations, including that of a urologist on April 3, 2009, and extensive testing undergone by Plaintiff, Dr. Hood's professional medical opinion was and is that Plaintiff would not benefit from any further consultation with any off-site specialist. (Doc. 23, Hood Aff. at ¶ 5).

At this time, the medical staff decided they would no longer evaluate Plaintiff for his complaints of testicular pain. (Id.; Doc. 13 at p. 4(D)). They have continued to evaluate him for other medical problems. (Id. at ¶ 9). In Dr. Barber's professional medical opinion, the members of the Holman medical staff have provided Plaintiff with the appropriate and reasonable course of treatment for his complaints of testicular pain. (Id.).

Throughout this period, Plaintiff filed a number of grievance forms and appeals complaining that the treatment the medical staff was providing was inadequate. (Doc. 13 at pp. 4(C) – 4(D)). He was not satisfied with the way these grievances were handled and/or determined. (Id.). Defendants, on the other hand, claim that Plaintiff never submitted a proper medical grievance appeal. (Doc. 23 at p. 8).[1]

On February 16, 2011, Plaintiff filed his original complaint. (Doc. 1). On September 27, 2011, the court ordered Plaintiff to refile his complaint on the proper form. (Doc. 12). Plaintiff then filed his Prisoner Complaint [For Inmate Action] Under 42 U.S.C. § 1983 on October 12, 2011. (Doc. 13). Based upon the foregoing

---

[1] It is not necessary for the Court to resolve or consider this disputed issue in determining the propriety of summary judgment in this case.

facts, Plaintiff alleges that Defendants Dr. Pamela Barber, Dr. Hugh Hood, and Donny Myers violated his constitutional right to be free from cruel and unusual punishment by exhibiting deliberate indifference to his serious medical need. (Id. at pp. 5-6). Plaintiff seeks injunctive and monetary relief. (Id. at p. 7).

In their Answer and Special Report, Defendants deny Plaintiff's claims and assert, among others, the affirmative defenses of Eleventh Amendment immunity and qualified immunity. (Docs. 23 and 24). Plaintiff has filed several documents in opposition to Defendants' special report (Docs. 25, 26, 27, 28, and 44), and Defendants have filed affidavits, medical records, and other relevant documents in support of their position (Docs. 23-1 through 23-16). On August 1, 2012, the Court entered an order converting Defendants' Special Report to a Motion for Summary Judgment, and affording the parties to submit additional briefs and materials in support of their positions. (Doc. 33). The motion has been fully briefed and is now ripe for resolution.

## II.  SUMMARY JUDGMENT STANDARD

In analyzing the propriety of a motion for summary judgment, the Court begins with these basic principles. The Federal Rules of Civil Procedure grant this Court

authority under Rule 56 to render "judgment as a matter of law" to a party who moves for summary judgment. Federal Rule of Civil Procedure 56(a) provides that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." In Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986), the Supreme Court held that summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact. . . ." However, all of the evidence and factual inferences reasonably drawn from the evidence must be viewed in the light most favorable to the nonmoving party. Adickes v. S.H. Kress & Co., 398 U.S. 144, 157 (1970); Jackson v. BellSouth Telecomms., 372 F.3d 1250, 1280 (11th Cir. 2004).

Federal Rule of Civil Procedure 56(e) further provides:

> If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may:
> (1) give an opportunity to properly support or address the fact;
> (2) consider the fact undisputed for purposes of the motion;
> (3) grant summary judgment if the motion and

> supporting materials--including the facts
> considered undisputed--show that the movant
> is entitled to it; or
> (4) issue any other appropriate order.

Fed. R. Civ. P. 56(e).

The party seeking summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the 'pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." Celotex, 477 U.S. at 323. The movant can meet this burden by presenting evidence showing there is no dispute of material fact or by pointing out to the district court that the nonmoving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof. Id. at 322-25.

Once the moving party has satisfied its responsibility, the burden shifts to the non-movant to show the existence of a genuine issue of material fact. See Stabler v. Florida Van Lines, Inc., 2012 U.S. Dist. LEXIS 1637 at *19, 2012 WL 32660, at *5 (S.D. Ala. Jan. 6, 2012) (citing Clark v. Coats & Clark, Inc., 929 F.2d 604, 608 (11th Cir. 1991)). Summary judgment is proper when "a

party fails to make a showing sufficient to establish the existence of an essential element of that party's case." McDowell v. Brown, 392 F.3d 1283, 1288 (11th Cir. 2004) (citations and internal quotation marks omitted). "[T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. . . . If the evidence is merely colorable, . . . or is not significantly probative, . . . summary judgment may be granted." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249-50 (1986) (internal citations omitted). "After the nonmoving party has responded to the motion for summary judgment, the court must grant summary judgment if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." AGSouth Genetics, LLC v. Cunningham, 2011 U.S. Dist. LEXIS 51790, *8, 2011 WL 1833016, at *2 (S.D. Ala. May 13, 2011).

## III.  DISCUSSION

In this action, Plaintiff seeks redress for an alleged constitutional deprivation pursuant to 42 U.S.C. § 1983. Section 1983 provides that:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall

> be liable to the party injured in an action at law,
> suit in equity, or other proper proceeding for
> redress.  For the purposes of this section, any Act of
> Congress applicable exclusively to the District of
> Columbia shall be considered to be a statute of the
> District of Columbia.

42 U.S.C. § 1983 (1994).  Specifically, Plaintiff alleges that Defendants were deliberately indifferent to his serious medical need and that this indifference constituted cruel and unusual punishment in violation of the Eighth Amendment.  Plaintiff seeks monetary damages and an order requiring Defendants to provide him with off-cite medical treatment by a specialist.  (Doc. 13, p. 7).

The Eighth Amendment provides that, "[e]xcessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted."  U.S. Const. amend. VIII.  "The Eighth Amendment's proscription of cruel and unusual punishments prohibits prison officials from exhibiting deliberate indifference to prisoners' serious medical needs."  Campbell v. Sikes, 169 F.3d 1353, 1363 (11th Cir. 1999) (citing Estelle v. Gamble, 429 U.S. 97, 104 (1976)).

In Sims v. Mashburn, 25 F.3d 980 (11th Cir. 1994), the Eleventh Circuit delineated the objective and subjective portions of an Eighth Amendment claim as follows:

> An Eighth Amendment claim is said to
> have two components, an objective

> component, which inquires whether the alleged wrongdoing was objectively harmful enough to establish a constitutional violation, and a subjective component, which inquires whether the officials acted with a sufficiently culpable state of mind.

Sims, 25 F.3d at 983 (citing Hudson v. McMillian, 503 U.S. 1, 8 (1992)). To meet the objective element required to demonstrate a denial of adequate medical care claim in violation of the Eighth Amendment, a plaintiff first must demonstrate the existence of an "objectively serious medical need." Farrow v. West, 320 F.3d 1235, 1243 (11th Cir. 2003). A serious medical need is "'one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention.'" Id. (quoting Hill v. Dekalb Reg'l Youth Det. Ctr., 40 F.3d 1176, 1187 (11th Cir. 1994), overruled in part on other grounds by Hope v. Pelzer, 536 U.S. 730, 739 n. 9 (2002)). "In either of these situations, the medical need must be one that, if left unattended, pos[es] a substantial risk of serious harm." Id. (internal quotation marks and citation omitted).

In order to meet the subjective requirement of an Eighth Amendment denial of medical care claim, Plaintiff must demonstrate "deliberate indifference" to a serious

medical need.   Farrow, 320 F.3d at 1243.   "Deliberate indifference" entails more than mere negligence. Farmer v. Brennan, 511 U.S. 825, 835 (1994); Estelle, 429 U.S. at 106.   The Supreme Court clarified the "deliberate indifference" standard in Farmer by holding that a prison official cannot be found deliberately indifferent under the Eighth Amendment "unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Farmer, 511 U.S. at 837 (emphasis added).

In interpreting Farmer and Estelle, this Court explained in McElligott v. Foley, 182 F.3d 1248, 1255 (11th Cir. 1999), that "deliberate indifference has three components: (1) subjective knowledge of a risk of serious harm; (2) disregard of that risk; (3) by conduct that is more than mere negligence."   See also Taylor v. Adams, 221 F.3d 1254, 1258 (11th Cir. 2000)(stating that defendant must have subjective awareness of an "objectively serious need" and that his response must constitute "an objectively insufficient response to that need").

In this case, Plaintiff claims that his complaints of testicular pain constituted a serious medical need.   Other

than the presence of a small hydrocele during one of his many diagnostic tests, all other test and examinations of Plaintiff's testicles have been negative.   In <u>Bell v. Secretary of Florida Dept. of Corrections</u>, 491 F. App'x 57 (11th Cir. 2012), the Eleventh Circuit addressed the same issue as that presented here in a remarkably similar case. In <u>Bell</u>, an inmate also chronically complained of testicular pain.   <u>Bell v. Madan</u>, 2012 U.S. Dist. LEXIS 14525, *5, 2012 WL 394552, at *2 (M.D. Fla. Feb. 7, 2012). Like Plaintiff here, the inmate had preexisting testicular problems.   <u>Id.</u>, 2012 U.S. Dist. LEXIS 14525 at *14.   While incarcerated, he was examined numerous times and underwent a sonogram.   <u>Id</u>.   The sonogram revealed that he had a small, benign cyst on his right testicle.   <u>Id</u>.   The doctors advised him that no treatment was indicated for the cyst and recommended that he take Tylenol for the pain.   <u>Id</u>. at *16.

Under these factual circumstances, the Eleventh Circuit found that the inmate failed to meet the objective component of his claim of deliberate indifference to a serious medical need.   <u>Bell</u>, 491 F. App'x at 59.   The Court recognized that an objectively serious medical need is "one that a physician has diagnosed as requiring treatment or that is so obvious that even a lay person would recognize

the need for a doctor's attention." <u>Id</u>. at 59.  "Moreover, it must be a medical need that, if left unattended, poses a substantial risk of serious harm."  <u>Id</u>.  The Court concluded that the inmate could not meet the objective element of his claim because "he did not show that he had a serious medical need, because he did not show that his testicular cyst, if left unattended, posed a substantial risk of serious harm."  <u>Id</u>. at 59-60 (citing <u>Mann v. Taser Int'l, Inc.</u>, 588 F.3d 1291, 1307 (11th Cir. 2009)).

Like the inmate in <u>Bell</u>, Plaintiff here has failed to show that his testicular pain constitutes a serious medical need.  The only treatment that has been prescribed is Motrin for pain.  Moreover, there is no evidence that his condition, if left unattended "poses a substantial risk of serious harm."  In fact, all evidence that has been presented is to the contrary.  Thus, Plaintiff cannot meet the first element of his claim.

As discussed above, the second element of an Eighth Amendment denial of medical care claim, requires the plaintiff to demonstrate that the defendant showed "deliberate indifference" to a serious medical need. <u>Farrow</u>, 320 F.3d at 1243.  "Deliberate indifference" entails more than mere negligence. <u>Farmer</u>, 511 U.S. at 835; <u>Estelle</u>, 429 U.S. at 106.  In fact, "when a prison inmate

has received medical care, courts hesitate to find an Eighth Amendment violation." Waldrop v. Evans, 871 F.2d 1030, 1035 (11th Cir. 1989). In the instant case, Plaintiff's medical records, the affidavits submitted by Defendants, and Plaintiff's own allegations show that Plaintiff has been examined by both prison and private physicians to determine a cause and treatment for his persistent complaints of testicular pain. (Docs. 13, 23, and 23-1 through 23-16). Plaintiff has also had several diagnostic tests performed by private providers. (Id). None of these tests or examinations by various physicians has revealed an objective reason for Plaintiff's complaints. Plaintiff has been prescribed Motrin to help with the pain. Plaintiff's claim is based solely on his argument that he is not being properly treated for his complaints and primarily is based on his claim that he should be provided a stronger pain medication.

Whether Plaintiff disagrees with the efficacy of the recommended treatment or simply prefers a different course of treatment, such a complaint does not state a valid claim of medical mistreatment under the Eighth Amendment. See, e.g., Adams v. Poag, 61 F.3d 1537, 1545 (11th Cir. 1995) ("[T]he question of whether governmental actors should have employed additional diagnostic techniques or forms of

treatment 'is a classic example of a matter for medical judgment' and therefore not an appropriate basis for grounding liability under the Eighth Amendment.") (quoting Estelle, 429 U.S. at 107); Harris v. Thigpen, 941 F.2d 1495, 1505 (11th Cir. 1991)("Nor does a simple difference in medical opinion between the prison's medical staff and the inmate as to the latter's diagnosis or course of treatment support a claim of cruel and unusual punishment.").

Plaintiff's allegations are clearly insufficient to establish the subjective element of "deliberate indifference" necessary to constitute an Eighth Amendment violation. Plaintiff argues that Defendants should have given him Ultram instead of Motrin. The determination of the type of medication to give a patient is clearly a matter of medical judgment. It is well established that Plaintiff's disagreement with his medical treatment does not rise to the level of a constitutional violation.

The Court finds that Plaintiff has not alleged facts that support a violation of his constitutional rights related to his medical treatment while incarcerated at Holman. Accordingly, the Court finds that Plaintiff's claims against Defendants Barber, Hood, and Myers fail as a

matter of law.[2]

## IV.  MOTION TO AMEND

On March 5, 2012, Plaintiff filed a Motion for Leave
to Add Additional Defendants and Motion to Amend Complaint.
(Doc. 17).   Plaintiff seeks to add nurses employed at
Holman who, according to Plaintiff, did not properly
process his sick call requests relating to his complaints
of testicular pain.  (Id.).  Pursuant to Rule 15(a)(2) of
the Federal Rules of Civil Procedure, after the time for
amending as a matter of course has expired, as it had in
this case, "a party may amend its pleading only with the
opposing party's written consent or the court's leave."
Defendants have not agreed to an amendment.  Because the
Court finds, in light of its holding herein, that the
amendment Plaintiff seeks would be futile, Plaintiff's
Motion to Amend is denied.

---

[2] In his complaint, Plaintiff seeks to hold Dr. Hood liable
under the theory of respondeat superior and failure to
supervise.   (Doc. 13, p. 5).   However, in his statement of
allegations, he does not set forth any allegations against
Dr. Hood  to support these claims.  His allegations against
Dr. Hood are based upon Dr. Hood's own actions or inaction.
Nonetheless, any such claim would fail.  "It is well
established in this Circuit that supervisory officials are
not liable under § 1983 for the unconstitutional acts of
their subordinates on the basis of respondeat superior or
vicarious liability." Cottone v. Jenne, 326 F.3d 1352,
1360 (11th Cir. 2003) (citations omitted).

## V.   CONCLUSION

Based on the foregoing, the Court concludes that Defendants' Motion for Summary Judgment in their favor on any and all claims asserted against them by Plaintiff in this action is due to be **GRANTED** and hereby recommends that such claims be **DISMISSED with prejudice.**  The Court further recommends that Plaintiff's Motion for Leave to Add Additional Defendants and Motion to Amend Complaint be **DENIED.**

The attached sheet contains important information regarding objections to the Report and Recommendation.

**DONE** this **8th** day of **March, 2013.**

/s/ SONJA F. BIVINS
**UNITED STATES MAGISTRATE JUDGE**

**MAGISTRATE JUDGE'S EXPLANATION OF PROCEDURAL RIGHTS AND
RESPONSIBILITIES FOLLOWING RECOMMENDATION, AND
FINDINGS CONCERNING NEED FOR TRANSCRIPT**

1.  ***Objection***.       Any   party   who   objects   to   this
recommendation or anything in it must, within fourteen (14)
days of the date of service of this document, file specific
written objections with the Clerk of this court.   Failure
to  do so will bar a *de novo* determination by the district
judge of anything in the recommendation and will bar an
attack, on appeal, of the factual findings of the
Magistrate Judge.   *See* 28 U.S.C. §636(b)(1)(C); *Lewis v.
Smith*, 855 F.2d 736, 738 (11th Cir. 1988); *Nettles v.
Wainwright*, 677 F.2d 404 (5th Cir. Unit B, 1982) (*en banc*).
The  procedure  for  challenging  the  findings  and
recommendations of the Magistrate Judge is set out in more
detail in SD ALA LR 72.4 (June 1, 1997), which provides
that:

> A party may object to a recommendation entered by
> a magistrate judge in a dispositive matter, that
> is, a matter excepted by 28 U.S.C. §636(b)(1)(A),
> by filing a "Statement of Objection to Magistrate
> Judge's Recommendation" within ten days[3] after
> being served with a copy of the recommendation,
> unless a different time is established by order.
> The statement of objection shall specify those
> portions of the recommendation to which objection
> is made and the basis for the objection.   The
> objecting party shall submit to the district
> judge, at the time of filing the objection, a
> brief setting forth the party's arguments that
> the magistrate judge's recommendation should be
> reviewed *de novo* and a different disposition
> made.   It is insufficient to submit only a copy
> of the original brief submitted to the magistrate
> judge, although a copy of the original brief may
> be submitted or referred to and incorporated into
> the brief in support of the objection.   Failure
> to submit a brief in support of the objection may
> be deemed an abandonment of the objection.
> A magistrate judge's recommendation cannot be appealed

---

[3] Effective December 1, 2009, the time for filing
written objections was extended to "14 days after being
served with a copy of the recommended disposition[.]"  Fed.
R. Civ. P. 72(b)(2).

to a Court of Appeals; only the district judge's order or
judgment can be appealed.

2.   ***Transcript (applicable Where Proceedings Tape
Recorded)***.   Pursuant to 28 U.S.C. §1915 and FED. R. CIV. P.
72(b), the Magistrate Judge finds that the tapes and
original records in this case are adequate for purposes of
review.   Any party planning to object to this
recommendation, but unable to pay the fee for a transcript,
is advised that a judicial determination that transcription
is necessary is required before the United States will pay
the cost of the transcript.